**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY, as assignee of Illinois Community College Risk Management Consortium, <br><br> Plaintiff, <br><br> v. <br><br> STATE FARM FIRE AND CASUALTY COMPANY and ROBERT L. BREUDER, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. |

**COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF**

Plaintiff, Great American Insurance Company ("Great American"), as assignee of Illinois Community College Risk Management Consortium ("ICCRMC"), by and through its undersigned counsel, for its Complaint for Declaratory Judgment and Other Relief against State Farm Fire and Casualty Company ("State Farm") and Robert L. Breuder ("Breuder"), alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for declaratory relief, equitable contribution, contractual subrogation, and/or equitable subrogation, brought pursuant to 28 U.S.C. §§ 2201 and 2202, for the purpose of resolving an actual controversy between the parties regarding State Farm's wrongful failure and refusal—over a period of nearly seven years—to participate in the defense of its insured, Kathy Hamilton ("Hamilton"), a litigant in an underlying civil lawsuit pending in the U.S. District Court for the Northern District of Illinois, Eastern Division, styled *Robert Breuder v. Board of Trustees of Community College District No. 502, DuPage County, Illinois, et al.*, Case No. 1:15-cv-09323 (the "Underlying Lawsuit").

2. Despite the fact that State Farm and ICCRMC each have a concurrent, independent, and ongoing duty to defend (and ultimately indemnify) Hamilton with respect to certain claims asserted in the Underlying Lawsuit, ICCRMC has defended Hamilton alone, incurring over $3.7 million in loss adjustment expenses, without State Farm's participation.

3. In light of State Farm's failure to timely reserve its rights or to file a declaratory judgment lawsuit seeking a determination of the obligations owed under a Personal Liability Umbrella Policy that State Farm issued to Hamilton, State Farm is estopped from asserting any defenses to coverage.

4. Great American, as assignee of ICCRMC, is entitled to reimbursement of an equitable share of all attorneys' fees and expenses incurred by ICCRMC, post-tender to State Farm, in connection with the defense provided to Hamilton in the Underlying Lawsuit, plus prejudgment interest on all sums awarded.

## THE PARTIES AND CITIZENSHIP

5. Great American is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business in Cincinnati, Ohio. Great American is authorized to transact the business of insurance and reinsurance within the State of Illinois.

6. Upon information and belief, State Farm is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Bloomington, Illinois.

7. Upon information and belief, Breuder is a citizen of Illinois. Breuder is a necessary party to this action under applicable Illinois law, and is joined as a defendant to ensure that he is bound by any judgment rendered herein.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over this action, pursuant to 28 U.S.C. § 1332(a), because complete diversity exists between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to this claim occurred within this district and the Underlying Lawsuit is pending in this District Court.

10. State Farm and Breuder have sufficient minimum contacts with this judicial district to confer personal jurisdiction over them in this Court.

**THE UNDERLYING LAWSUIT**

11. The Underlying Lawsuit arises from Breuder's unceremonious termination as President of the College of DuPage on October 20, 2015.

12. On October 21, 2015, the day after his termination, Breuder filed the Underlying Lawsuit against the Board of Trustees of Community College District No. 502, DuPage County, Illinois (the "Board"), and individual Board members Deanne Mazzochi, Frank Napolitano, Charles Bernstein, and Hamilton (together, the "Individual Defendants"). (A true and correct copy of the Complaint filed in the Underlying Lawsuit is attached hereto as Exhibit 1.)

13. The Underlying Lawsuit was brought pursuant to 42 U.S.C. § 1983 for violation of Breuder's rights under the Due Process Clause of the U.S. Constitution as well as for various state law violations.

14. Among other claims and causes of action asserted in the Underlying Lawsuit, Breuder alleges that the Individual Defendants each made defamatory and stigmatizing remarks about him at Board meetings, to media outlets, and to the general public.

15. Importantly, Breuder alleges that the Individual Defendants acted to advance their own personal and political interests and agendas and, thus, are liable not only in their official capacities as Board members but also in their individual capacities regarding statements made and acts committed that were unrelated to the fulfillment of their duties as Board members or to the administration of the College of DuPage.

16. While the court dismissed those aspects of Breuder's claims against the Individual Defendants regarding defamatory statements made before the Board (based on immunity), it did not dismiss Breuder's claims against the Individual Defendants regarding defamatory statements made to the general public through media outlets, which the court determined were plausible and remain triable issues.

## THE ICCRMC POLICY AND RELATED CLAIMS HANDLING

17. ICCRMC issued a Coverage Agreement (policy number ICCRMC2015-502) to the College of DuPage for the policy period July 1, 2015 to July 1, 2016 (the "ICCRMC Policy"). (A true and correct copy of the ICCRMC Policy is attached hereto as Exhibit 2.)

18. Among other risks, the ICCRMC Policy insures Educators' Legal Liability, which provides coverage to **MEMBERS**[1] for Errors & Omissions and Employment Practices Liability.

19. Under the ICCRMC Policy, the Limit of Insurance for Educators' Legal Liability is $19.925 million each **CLAIM** and in the aggregate, subject to a **MEMBER RETENTION** in the amount of $75,000.00.

20. Among other persons and organizations, **MEMBER** includes any past, present or future members of boards or commissions, but only in respect to acts or operations by or on behalf of the **NAMED MEMBER** (College of DuPage).

---

[1] Terms in bold capitalized letters are defined in the ICCRMC Policy.

4

21. Accordingly, Hamilton is not a **MEMBER**, and no insurance coverage is available to her under the ICCRMC Policy, with respect to defamatory statements she allegedly made to the general public through media outlets, which were made in her individual capacity and not made on behalf of the College of DuPage.

22. On December 4, 2015, ICCRMC, through counsel, sent a coverage position letter to the Board, copying the Individual Defendants, advising that ICCRMC would agree to provide a defense to each of them in the Underlying Lawsuit pursuant to a reservation of rights.

23. In the December 4, 2015 letter—as well as in subsequent letters dated August 5, 2021 and May 6, 2022—ICCRMC specifically advised that there is no coverage for the Individual Defendants for conduct committed outside of or unrelated to the fulfillment of their duties as Board members, for which ICCRMC reserved the right to deny coverage.

24. Accordingly, the Individual Defendants were urged to tender the lawsuit to their respective personal liability insurers whose policies may insure the claims for which there is no coverage under the ICCRMC Policy.

25. ICCRMC has continued to provide a complete defense to the Board and the Individual Defendants, including Hamilton, since the inception of the Underlying Lawsuit.

26. The total defense costs incurred by ICCRMC in the course of handling the defense of the Board and the Individual Defendants in the Underlying Lawsuit exceeds $9 million.

27. Of the more than $9 million incurred in defense costs to date, the costs related to the handling of Hamilton's defense, individually, exceed $3.7 million.

## THE STATE FARM POLICY AND RELATED CLAIMS HANDLING

28. State Farm issued a Personal Liability Umbrella Policy to Hamilton and her spouse (policy number 13-WJ-5034-4) for the policy period September 10, 2015 to September 10, 2016. (A true and correct copy of the State Farm Policy is attached hereto as Exhibit 3.)

29. The State Farm Policy, under which Hamilton is a Named Insured, provides personal liability umbrella insurance that applies, in certain contexts, excess of required underlying insurance.

30. Pursuant to the State Farm Policy, Hamilton was only required to carry underlying insurance with respect to certain risks, including Automobile Liability, Recreational Motor Vehicle Liability, Personal Residential Liability, and Watercraft Liability, none of which are implicated in the Underlying Lawsuit.

31. The applicable limit of insurance under the State Farm Policy for Personal Liability is $5 million and is not subject to any self-insured retention or deductible.

32. Under the insuring agreement of **COVERAGE L – PERSONAL LIABILITY**, the State Farm Policy provides, in relevant part, as follows:

> **COVERAGE L – PERSONAL LIABILITY**
>
> If a claim is made or suit is brought against an **insured**[2] for damages because of a **loss** for which the **insured** is legally liable and to which this policy applies, **we** will pay on behalf of the **insured** the damages that exceed the **retained limit**.

33. With respect to the defense of an **insured**, the State Farm Policy provides, in relevant part, as follows:

> **Defense**
>
> If a suit is brought against any **insured** for damages because of a **loss** to which this policy applies, **we** will provide a defense to the

---

[2] Terms in bolded font are defined in the State Farm Policy.

6

     **insured** at **our** expense by counsel of **our** choice when the basis
     for the suit is a **loss** that is not covered by any other insurance
     policy but is covered by this policy.

34. **Loss** is defined in the State Farm Policy, in relevant part, as "the commission of an offense which first results in **personal injury** during the policy period."

35. The State Farm Policy defines **Personal Injury**, in relevant part, as "injury . . . arising out of one or more of the following offenses: . . . c. libel, slander, [and] defamation of character. . . ."

36. **Retained limit**, as applicable where an **insured** has no **required underlying insurance**, means the amount shown in the declarations as the "Self-Insured Retention." The State Farm Policy declarations state "none" in the space next to Self-Insured Retention.

37. In the Underlying Lawsuit, Breuder alleges that the Individual Defendants, including Hamilton, made defamatory and stigmatizing remarks about him to the general public through media outlets.

38. Any injury arising from above-referenced conduct qualifies as **personal injury** first sustained during the 2015–2016 policy period and, thus, is a **loss** to which the State Farm Policy applies.

39. While the insurance under the State Farm Policy generally applies as excess over certain requisite underlying insurance, the State Farm Policy also serves to protect Hamilton with respect to liability for which she is not otherwise insured and, therefore, applies on a primary basis in certain instances.

40. State Farm elected to carry the primary burden with respect to Hamilton's personal liability for defamatory statements made to the general public that were unrelated to the fulfillment of her duties as a Board Member, for which there irrefutably is no coverage available under the ICCRMC Policy or any other policy of insurance.

41. In light of the possibility for indemnity coverage under both the ICCRMC Policy and the State Farm Policy, ICCRMC and State Farm each have an independent, concurrent, and ongoing duty to provide a complete defense to Hamilton in the Underlying Lawsuit.

42. On October 22, 2015, the day after Breuder filed the Underlying Lawsuit, Hamilton emailed her State Farm agent, Doug Kramer ("Kramer"), regarding Breuder's Complaint.

43. In the October 22, 2015 email, Hamilton advised that the Board had voted to fire Breuder and that he "filed a lawsuit against four members of the board in their official capacity *and individually*." (emphasis added).

44. Hamilton specifically advised in her October 22, 2015 email that she was one of the Board members who had been sued and she requested that Kramer call her to "discuss how our current coverage might be needed in this suit."

45. Hamilton attached a copy of Breuder's Complaint to her October 22, 2015 email.

46. Hamilton attests that it was her intention for State Farm to provide her with a defense in the Underlying Lawsuit and that she "has always" maintained such intent. (A true and correct copy of Hamilton's June 29, 2022 Affidavit is attached hereto as Exhibit 4.)

47. Indeed, at no point in time did Hamilton knowingly forgo State Farm's assistance or instruct State Farm not to involve itself in the litigation.

48. To the contrary, Hamilton maintained ongoing communications with State Farm regularly throughout the duration of the Underlying Lawsuit.

49. Despite State Farm's actual knowledge of the Underlying Lawsuit on October 22, 2015 and of Hamilton's potential liability for conduct committed in her individual capacity for which there was no coverage under any other policy, State Farm did not acknowledge its defense obligation or offer to participate in Hamilton's defense upon receipt thereof.

50. To the extent State Farm was unclear as to Hamilton's intent when she tendered her defense of the Underlying Lawsuit to Kramer, State Farm did not undertake measures to obtain clarification and did not expressly ask if Hamilton desired its assistance.

51. Nor did State Farm timely reserve its rights under the State Farm Policy or otherwise file a declaratory judgment action seeking an adjudication of the parties' rights and obligations under the State Farm Policy.

52. Rather, State Farm shirked its defense obligation (for almost seven years), choosing to simply monitor the claim, while resting assured that Hamilton was being defended by another insurer (ICCRMC) and seemingly content to let ICCRMC carry the defense burden alone.

53. Under Illinois law, a liability policy becomes no less breached because of the fortuitous existence of another insurer that is willing to meet its own obligations, like ICCRMC.

54. State Farm's duty to defend was triggered upon its receipt of Hamilton's direct tender of the Underlying Lawsuit on October 22, 2015.

55. Nevertheless, State Farm has failed and refused to participate in Hamilton's defense at any point in time, through the filing of this declaratory judgment lawsuit.

56. In fact, it was not until May 4, 2022 that State Farm expressed a willingness to even consider referring the matter to "[State Farm's] Duty to Defend unit to review for coverage determination."

57. In light of State Farm's breach of the duty to defend Hamilton, ICCRMC has been forced to pay Hamilton's defense fees and costs in the Underlying Lawsuit in their entirety.

**ASSIGNMENT OF RIGHTS**

58. On or about June 23, 2022, ICCRMC and Great American entered into a written agreement wherein ICCRMC assigned, conveyed, and transferred to Great American all of its

9

rights, claims, and causes of action that ICCRMC has or may acquire against State Farm based on, attributable to, arising out of, involving, resulting from, or in any way related to the claims at issue in the Underlying Lawsuit, including, without limitation, all statutory rights, contractual and extracontractual rights, subrogation rights, contribution rights, and rights arising in tort or otherwise, regarding any obligations owed by State Farm to Hamilton under the State Farm Policy under applicable law with respect to defense, indemnification, and good faith claims handling.

59. An actual, present, and justiciable controversy has arisen and now exists between Great American, as assignee of ICCRMC, and State Farm regarding their respective rights, duties, and obligations under the ICCRMC and State Farm policies.

## COUNT I – DECLARATORY RELIEF

60. Great American restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

61. There is a potentiality of coverage under the State Farm Policy for the claims asserted against Hamilton in the Underlying Lawsuit concerning defamatory statements made to the general public that were unrelated to the fulfillment of her duties as a Board member.

62. State Farm has a duty to defend Hamilton in the Underlying Lawsuit under the State Farm Policy.

63. State Farm's defense obligation is primary with respect to claims asserted against Hamilton concerning defamatory statements made to the general public that were unrelated to the fulfillment of her duties as a Board member, for which there is no coverage under any other policy.

64. State Farm's duty to defend Hamilton under the State Farm Policy is independent of, and concurrent with, ICCRMC's duty to defend Hamilton under the ICCRMC Policy.

65. State Farm has an equitable duty and responsibility to pay a fair and proportionate share of the costs of defense incurred in connection with Hamilton's defense in the Underlying Lawsuit.

66. ICCRMC has made multiple compulsory payments of more than its fair share of the purported common obligation or burden of defending Hamilton in the Underlying Lawsuit.

67. ICCRMC first came into possession of information regarding the existence of a potential claim against State Farm on September 20, 2021, when it received copies of State Farm's coverage communications with Hamilton from Hamilton's defense counsel.

68. Great American, as assignee of ICCRMC, is entitled to recoup from State Farm a proportionate share of defense costs and expenses that it has paid on behalf of Hamilton in the Underlying Lawsuit.

69. Great American asserts and contends that declaratory judgment is both necessary and proper at this time for the Court to determine the respective rights and liabilities of the parties regarding their purported obligations to defend and indemnify Hamilton in the Underlying Lawsuit.

## COUNT II – EQUITABLE CONTRIBUTION

70. Great American restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

71. The ICCRMC Policy and the State Farm Policy both insure Hamilton on a primary basis with respect to certain claims asserted against Hamilton in the Underlying Lawsuit.

72. There is an identity between the ICCRMC Policy and the State Farm Policy as to the parties, insurable interests, and risks as both insurers provide coverage to Hamilton for injury and claims arising out of defamation.

11

73. ICCRMC agreed to participate in Hamilton's defense with respect to all claims asserted against her in the Underlying Lawsuit, subject to a full and complete reservation of rights.

74. The allegations made, pleaded, or otherwise asserted against Hamilton in the Underlying Lawsuit set forth claims for damages potentially covered under the State Farm Policy.

75. Accordingly, State Farm is obligated to defend Hamilton in the Underlying Lawsuit under the State Farm Policy, which policy reflects State Farm's agreement to undertake the duty to defend suits brought against any **insured** for damages because of a **loss** to which the State Farm policy applies and for which the basis of the suit is a **loss** that is not covered by any other insurance policy but is covered by the State Farm Policy.

76. To date, State Farm has failed and refused to defend Hamilton and/or has failed to contribute a full and equitable share toward ICCRMC's costs of defending Hamilton, which have been incurred and are being incurred in connection with the Underlying Lawsuit.

77. By reason of State Farm's failure to discharge its obligations and to equitably participate in Hamilton's defense, ICCRMC has incurred and/or paid, and will continue to incur and/or pay, more costs than it would have, had State Farm agreed to defend and/or contribute a full and equitable share of Hamilton's defense in performance of its due and owing obligations under the State Farm Policy.

78. State Farm's failure to discharge its obligations under the State Farm Policy is wrongful, and has caused an inequitable result, in that ICCRMC is paying and has paid more than its fair share of the costs of the purported common obligation or burden of defending Hamilton in the Underlying Lawsuit.

79. Because of State Farm's wrongful failure to discharge its obligations under the State Farm Policy, Great American (as assignee of ICCRMC) is entitled to equitable contribution, to reimburse it for costs equivalent to State Farm's fair and equitable proportionate share of the total costs of defense incurred in connection with the claims against Hamilton in the Underlying Lawsuit, with interest thereon at the prescribed legal rate.

## COUNT III – CONTRACTUAL SUBROGATION
### (Pled in the Alternative)

80. Great American restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

81. Section 16 of the General Coverage Agreement Conditions in the ICCRMC Policy provides, in relevant part, that ICCRMC is subrogated, at its sole discretion, to all rights which any **MEMBER** may have against any person or other entity in respect to any claim or payment made under the ICCRMC Policy including any person or organization hired to investigate, handle, settle or defend any **OCCURRENCE**, **CLAIM**, proceeding or **SUIT** resulting in the aforementioned payment.

82. Accordingly, Great American, as assignee of ICCRMC, is contractually subrogated to Hamilton's rights as against State Farm to recover the sums that State Farm should have paid.

83. By reason of State Farm's failure to discharge its obligations, and to equitably participate in Hamilton's defense, ICCRMC has incurred and/or paid, and will continue to incur and/or pay, more costs than it would have, had State Farm agreed to defend and/or contribute a full and equitable share of Hamilton's defense in performance of its due and owing obligations under the State Farm Policy.

84. State Farm's failure to discharge its obligations under the State Farm Policy is wrongful, and has caused an inequitable result, in that ICCRMC is paying and has paid more than its fair share of the costs of the purported common obligation or burden of defending Hamilton in the Underlying Lawsuit.

85. Because of State Farm's wrongful failure to discharge its obligations under the State Farm Policy, Great American (as assignee of ICCRMC) is entitled to reimbursement for costs equivalent to State Farm's fair and equitable proportionate share of the total costs of defense incurred in connection with the claims against Hamilton in the Underlying Lawsuit, with interest thereon at the prescribed legal rate.

## COUNT IV– EQUITABLE SUBROGATION
### (Pled in the Alternative)

86. Great American restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

87. ICCRMC and State Farm each have an independent, concurrent, and ongoing duty to provide a complete defense to Hamilton in the Underlying Lawsuit under their respective policies.

88. ICCRMC discharged its liability to Hamilton and at the same time extinguished the liability of State Farm.

89. State Farm's failure to discharge its obligations under the State Farm Policy is wrongful.

90. Because of State Farm's wrongful failure to discharge its obligations under the State Farm Policy, Great American (as assignee of ICCRMC) is entitled to reimbursement for costs equivalent to State Farm's fair and equitable proportionate share of the total costs of

defense incurred in connection with the claims against Hamilton in the Underlying Lawsuit, with interest thereon at the prescribed legal rate.

### COUNT V – ESTOPPEL

91. Great American restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

92. To prevent the application of estoppel when a complaint potentially falls within coverage, an insurer must either: (1) defend the underlying suit under a reservation of rights; or (2) seek a declaratory judgment that no coverage exists.

93. An insurer that fails to take either of these steps and is subsequently found to have wrongfully denied coverage will be estopped from raising defenses to coverage.

94. Despite there being a potentiality of coverage under the State Farm Policy for the claims asserted against Hamilton in the Underlying Lawsuit, State Farm elected not to defend Hamilton under a reservation of rights and also failed to seek a declaratory judgment that no coverage exists.

95. Given State Farm's wrongful failure and refusal to acknowledge its duty to defend Hamilton or to otherwise comply with Illinois law, State Farm is estopped from raising defenses to coverage under the State Farm Policy.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Great American Insurance Company, as assignee of ICCRMC, respectfully requests that this Court enter judgment in its favor, and against all defendants, as follows:

1. Declaring that the allegations of the Complaint filed in the Underlying Lawsuit create the potential that Hamilton will be liable for damages covered under the State Farm Policy;

2. Declaring that State Farm has a duty to defend Hamilton against all claims,

15

        demands, actions, and causes of action asserted against her in the Underlying Lawsuit;

3. Declaring that State Farm's defense and indemnity obligations under the State Farm Policy are co-primary with ICCRMC's obligations under the ICCRMC Policy;

4. Declaring that State Farm has an equitable duty and responsibility to pay a fair and proportionate share of the costs of defense incurred in connection with Hamilton's defense in the Underlying Lawsuit;

5. Declaring that ICCRMC has made compulsory payments exceeding its fair share of the purported common obligation or burden of defending Hamilton in the Underlying Lawsuit;

6. Declaring that ICCRMC is entitled to recoup from State Farm a fair and proportionate share of all defense costs and expenses that it has paid on behalf of Hamilton in the Underlying Lawsuit;

7. Declaring that State Farm is estopped from asserting any defenses to coverage under the State Farm Policy;

8. For general damages in an amount to be proven at trial;

9. For prejudgment interest;

10. For costs of suit herein; and

11. For such other and further relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff Great American Insurance Company hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

| | |
|---|---|
| Dated: July 20, 2022 | Respectfully submitted, |

        /s/ Jordon S. Steinway
        Jordon S. Steinway
        Katherine A. Martin
        BATESCAREY LLP
        191 North Wacker, Suite 2400
        Chicago, Illinois 60606
        Telephone: (312) 762-3169
        Email: jsteinway@batescarey.com
        Email: kmartin@batescarey.com

        *Counsel for Great American Insurance Company*

20676.3017961