# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT L. BREUDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.:  15 cv 9323 |
| | ) | |
| BOARD OF TRUSTEES OF COMMUNITY | ) | |
| COLLEGE DISTRICT NO. 502, DUPAGE | ) | |
| COUNTY, ILLINOIS, an Illinois body politic | ) | |
| and corporate, KATHY HAMILTON in her | ) | |
| official and individual capacity, DEANNE | ) | |
| MAZZOCHI in her official and individual | ) | |
| capacity, FRANK NAPOLITANO in his official | ) | |
| and individual capacity, and CHARLES | ) | |
| BERNSTEIN in his official and individual | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff ROBERT L. BREUDER, by and through his undersigned counsel, hereby submits this Complaint against Defendants BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 502, DUPAGE COUNTY, ILLINOIS, a body politic and corporate, KATHY HAMILTON, in her personal and official capacity, DEANNE MAZZOCHI, in her personal and official capacity, FRANK NAPOLITANO, in his personal and official capacity, and CHARLES BERNSTEIN, in his personal and official capacity, and alleges as follows:

## NATURE OF ACTION

1.      This is an action for damages and equitable relief arising under 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and Illinois common law. From January 1, 2009 until his termination on October 20, 2015, Plaintiff Robert L. Breuder, Ph.D. ("Dr. Breuder"), served as President of the College of DuPage, located in Glen Ellyn, Illinois,

pursuant to a valid and enforceable employment contract and related addenda/agreements. Dr. Breuder was deprived of his civil and constitutional rights when Defendants wrongfully terminated his employment in violation of his contracts, without due process, and based on false charges of misconduct that were asserted by the individual defendants only to further their personal interests and political agendas. These actions have resulted in substantial harm to Dr. Breuder, including the loss of his employment and other benefits conferred by his employment agreements, irreparable damage to his personal and professional reputation, loss of various professional opportunities, and acute emotional distress.

## JURISDICTION AND VENUE

2.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the laws of the United States, specifically 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

3.      This Court has supplemental jurisdiction over Dr. Breuder's state law claims pursuant to 28 U.S.C § 1367.

4.      Venue is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) since the events giving rise to the claims asserted herein occurred, and the Defendants conduct business and/or reside, within this District.

## THE PARTIES

5.      Dr. Breuder is a resident of the Village of Lake Barrington, Illinois. Dr. Breuder served as President of the College of DuPage, located in Glen Ellyn, Illinois, from January 1, 2009 until his wrongful termination on October 20, 2015. Dr. Breuder has served as a college president for thirty-five years. The College of DuPage was his third presidential appointment.

6.      Defendant Board of Trustees of Community College District No. 502, DuPage

2

County, Illinois ("Board") is a body politic and corporate organized under the Illinois Public Community Colleges Act, 110 ILCS 805 *et seq.*, which has offices and does business in Glen Ellyn, Illinois. The Board consists of seven duly elected and acting trustees. Those trustees include Kathy Hamilton, Deanne Mazzochi, Frank Napolitano, Charles Bernstein, Erin Birt, Dianne McGuire, and Joseph Wozniak.

7.      Defendant Kathy Hamilton ("Hamilton"), named in her official and individual capacity, is a resident of the Village of Hinsdale, Illinois, and currently serves as Chairman of the Board of Trustees of Community College District No. 502, DuPage County, Illinois.

8.      Defendant Deanne Mazzochi ("Mazzochi"), named in her official and individual capacity, is a resident of the Village of Elmhurst, Illinois, and currently serves as Vice Chairman of the Board of Trustees of Community College District No. 502, DuPage County, Illinois.

9.      Defendant Frank Napolitano ("Napolitano"), named in his official and individual capacity, is a resident of the Village of Bloomingdale, Illinois, and currently serves as Secretary of the Board of Trustees of Community College District No. 502, DuPage County, Illinois.

10.      Defendant Charles Bernstein ("Bernstein"), named in his official and individual capacity, is a resident of the Village of Wheaton, Illinois, and currently serves as a Trustee of the Board of Trustees of Community College District No. 502, DuPage County, Illinois.

## FACTUAL BACKGROUND

### Dr. Breuder's Employment Contract with the College of DuPage

11.      On November 18, 2008, the Board and Dr. Breuder entered into an employment contract which provided that Dr. Breuder would serve as President of the College of DuPage from January 1, 2009 to June 30, 2012 (hereinafter, "Employment Contract"). A true and correct copy of Dr. Breuder's Employment Contract, including addenda one to three of that contract, is

3

attached hereto as Exhibit A.

12.     At various times throughout Dr. Breuder's employment with the College of DuPage, the Board approved the extension of Dr. Breuder's Employment Contract. On March 7, 2014, Dr. Breuder was informed by then-Chairman Erin Birt that the majority of the Board had approved the extension of his Employment Contract to June 30, 2019.

13.     Dr. Breuder's Employment Contract is a duly authorized and enforceable agreement under the Illinois Public Community Colleges Act (the "Act"). Under Section 3-26 of the Act, the Board has the power "[t]o make appointments and fix the salaries of a chief administrative officer, who shall be the executive officer of the board, other administrative personnel and all teachers." 110 ILCS 805/3-26; *see also* 110 ILCS 805/3-21.

14.     Under the authority granted to the Board by the Act, it has been the custom and practice of the Board, since at least the mid-1990s, to enter into successive multi-year contracts with the chief administrative officers (*i.e.,* the president) and other high-ranking administrative personnel. Since the College of DuPage was founded in 1968, five persons (including Dr. Breuder) have served as president of the College. Each president preceding Dr. Breuder served anywhere from a four to a twelve-year term under consecutive multi-year employment contracts, which included, on information and belief, automatic rollover provisions.

15.     In accordance with the Board's authority under the Act, and the aforementioned customs and practices, Dr. Breuder's Employment Contract, as extended on March 7, 2014, conferred and established in Dr. Breuder a property interest in his continued employment as President of the College of DuPage from January 1, 2009 through June 30, 2019. Thus, the Board could not terminate Dr. Breuder's employment without due process or in contravention of the terms of his Employment Contract.

4

16.    Section G of the Employment Contract sets forth the permissible basis upon which the Board can terminate Dr. Breuder's employment. Section G states that absent mutual agreement, retirement, resignation, mental or physical incapacity, or death, Dr. Breuder can only be terminated for cause. Exh. A § G.  Section G defines "cause" as follows:

(i)    the President's material failure or refusal to perform his duties hereunder, for any reason other than mental or physical incapacity, after the President has been given at least forty-five (45) days prior written notice of such breach and a reasonable, opportunity to cure such breach;

(ii)   the President's material failure to perform the reasonable and legitimate directives of the Board;

(iii)  misconduct by the President, outside the scope of his employment by the College hereunder, which is materially detrimental to the reputation of the Board or the College in the community; or

(iv)   misconduct by the President, outside the scope of his employment by the College hereunder, which is materially detrimental to the reputation of the President in the community.

*Id.*

17.    Section G of the Employment Contract also sets forth specific procedures that the Board must follow in pursuing Dr. Breuder's termination for cause. Section G.3 states:

The Board's right to terminate this Agreement for Cause pursuant to Section G.1(f) of this Agreement may be exercised by the affirmative vote of at least five (5) of the seven (7) members of the Board in favor of the President's dismissal for Cause and the giving of written notice to the President specifying, in detail, the grounds for such termination. Upon the President's receipt of written notice from Board pursuant to Section G.1(f), the President has the right to appear before all seven (7) members of the Board, at a meeting conducted in executive session, to discuss the breach asserted by the Board and its cure. Where the Board is terminating for cause under G.1(f)(i), and if the breach is not cured prior to the expiration of the cure period provided herein, such termination will be effective upon the expiration of such 45 day cure period and the Board's reaffirmation of the President's dismissal for Cause by an affirmative vote of at least five (5) of its seven (7) members.

*Id.* § G.3.

18.     Section G also provides a remedy in the event the Board terminates Dr. Breuder's

employment without cause.  Section G.4 states:

> In the event of the termination of the President's employment hereunder by the
> Board without Cause prior to the expiration of the then-current term of this
> Agreement, the President will be entitled to receive the full amount of the
> compensation (including the cash equivalent of the SURS contribution described
> above if SURS does not allow the College to make a SURS contribution) and all
> benefits that he would have received had this Agreement not been terminated
> prior to the expiration of the term of this Agreement which expires no earlier than
> June 30, 2012 but may be extended as provided in this Agreement.

*Id.* § G.4.

19.     Similar to Dr. Breuder's Employment Contract, Board policies applicable to the

employment of administrators, including the president, provide that an administrator can only be

terminated under certain circumstances. Board Policy No. 15-275 states, in relevant part:

> An administrator's employment may be terminated or the administrator not
> reappointed by:
>
> 1.  Mutual agreement of the parties.
>
> 2.  Retirement or resignation of the administrator.
>
> 3.  Death or mental or physical disability of the administrator which
>     renders the administrator unable to perform his/her essential job
>     duties with or without a reasonable accommodation.
>
> 4.  A decision by the Board of the Trustees that the financial conditions
>     of the College warrants a reduction in staff or in programs.
>
> 5.  An overall unsatisfactory performance rating of the employee made
>     prior to the start of the contract year on the official administrative
>     evaluation instrument, together with the recommendation of the
>     President.
>
> 6.  For cause, including, but not limited to, violation of any College
>     policy, procedure, rule or regulation, or commission of any unlawful
>     act or other inappropriate or unprofessional conduct.

A true and correct copy of Board Policy No. 15-275 is attached hereto as Exhibit B.

*Dr. Breuder's Performance as President of the College of DuPage*

20. Pursuant to the Employment Contract, Dr. Breuder assumed his official duties on January 1, 2009. While President of the College of DuPage, Dr. Breuder fully performed his duties professionally and in accordance with the terms of his Employment Contract, Board policies, and all other rules and regulations governing his position.

21. Dr. Breuder is the fifth president of the College of DuPage. The College of DuPage is the second largest provider of higher education in the State of Illinois behind the University of Illinois. The College of DuPage is the largest single campus community college in the United States outside of the State of California. Almost 30,000 students are enrolled currently at the College of DuPage.

22. During his tenure as President of the College of DuPage, Dr. Breuder oversaw and achieved significant improvements, advancements, and accolades for the College, specifically and without limitation:

a. Dr. Breuder was instrumental in securing the passage of a $168 million capital referendum in November 2010 that enabled the College to complete renovations and new construction to enhance and modernize the campus.

b. Dr. Breuder's administration enabled the College to increase its fund balance from under $60 million to approximately $200 million during the worst recession since the Great Depression.

c. Dr. Breuder facilitated the College's receipt of approximately $25 million in grants during his presidency and helped the College's Foundation increase its assets from under $10 million to over $15 million.

d. Dr. Breuder spearheaded the completion of an approximately $550 million

campus improvement program which added nearly 1.5 million square feet of enhanced and modernized educational space.

e.   The Illinois Community College Board reported that between fall 2010 and 2014, the College's FTE enrollment grew by 6% while the state average for community colleges declined by 13.1%. During that same period, the College's headcount enrollments increased by 10.3% while the state's average decreased by 11.1%.

f.   A December 2014 Community Pulse Survey showed that District 502 residents overwhelmingly considered the College to have a good image and academic reputation.

g.   A 2014 Noel-Levitz Student Satisfaction Inventory Survey indicated that student satisfaction was higher than reported in any previous student survey.

h.   A 2013 Personnel Assessment of College Environment Survey placed the College in the high Consultative Leadership Range indicating a healthy campus climate and almost tying the all-time high reported in 1999.

i.   Dr. Breuder conceived of and implemented an annual comprehensive strategic long-rang planning process, for which the College received the 2014 Richard Goodman Strategic Planning Award from the Association of Strategic Planning for distinction in the practices of Strategy Development, Implementation and Results.

j.   Dr. Breuder was directly responsible for the College's receipt of the 2013 Illinois Council of Community Colleges Administrators Award for the development of multiple 3+1 on campus baccalaureate completion programs involving five partner universities.

k.   Dr. Breuder was influential in the College's receipt of the Governor's Award for Academic Excellence in serving veterans, making the College the first community college to earn this award from the Illinois Department of Veteran Affairs.

l.   Dr. Breuder was instrumental in the College's receipt of the Illinois Performance Excellence (ILPEX) Bronze Award for Commitment to Excellence as part of the College's reaffirmation of accreditation process, making the College the sixth community college ever to earn this award.

m.   For each fiscal year from 2009 through 2015, the College received unqualified audit opinions, with no material weaknesses or significant issues, from an external auditor, Crowe Horwath LLP.

n.   The College consistently received the Distinguished Budget Presentation Award and the Certificate of Achievement for Excellence in Financial Reporting from the Government Finance Officers Association.

o.   Dr. Breuder helped ensure the College maintained its Aaa and AAA bond ratings, respectively, from Moody's Investor Services and Standard and Poor.

p.   Dr. Breuder ensured that all eligible College employees will have received an annual salary increase in excess of 3% during his tenure as President. This occurred despite one of the worst economies since the Great Depression and State funding declined to under 10% from the entitled 33%.

q.   The College has added dozens of new programs of study to meet dynamic community needs.

r.   The College has consistently been identified as one of the largest providers of online course offerings among all Illinois community colleges.

s.   Dr. Breuder instituted a number of diversity initiatives at the College, including the creation and implementation of the new Center for Student Diversity.

t.   Dr. Breuder was responsible for the creation of the Presidential and Academic

Scholars Program, which dramatically increased the number of high achieving students enrolling at the College.

u.  Dr. Breuder successfully transformed the College's Business and Professional Institute into a highly lucrative and effective Business Solutions Program.

v.  Dr. Breuder oversaw the continuation of a successful Fulbright Scholarship Program, with the *Chronicle of Higher Education* ranking the College as a top producer of Fulbright Scholars.

w.  Dr. Breuder envisioned two companion state-of-the-art facilities, the Homeland Security Education Center and Homeland Security Training Center, both of which are currently being used to train emergency first responders, including fire fighters, EMTs, and law enforcement personnel.

x.  Dr. Breuder conceived of the Star Lake Pavilion, an outdoor venue for summertime concerts and movies that is open to the public at no cost. In its first season, thousands of community members enjoyed music/family movies under the stars.

y.  Dr. Breuder's team negotiated the Pathways to Engineering Program, which guarantees eligible engineering students admission into the Engineering Program at the University of Illinois-Urbana upon graduation from the College of DuPage.

23.  Dr. Breuder has received the following professional recognitions while President of the College: 2015 University at Albany Alumni Association Excellence Award (chosen, but later rescinded due to Defendants' actions), 2014 CASE V CEO of the Year Award, 2013 Illinois Senate recognition for 32 years of leadership in community colleges, 2013 Florida State University College of Education Distinguished Alumni Award, 2013 National Council for Marketing and Public Relations National Pacesetter Award, 2013 Association of Community

College Trustees CEO Award, Central Region, and the 2012 DuPage County Fire Chiefs Association Honorary Fire Chief.

24.     Pursuant to Board Policy No. 15-210, the Board is required to evaluate the College President at the end of each fiscal year and to provide such evaluation to the College President. Over the last five years, Dr. Breuder never received a negative evaluation from the Board relating to his performance as President of the College. Dr. Breuder received no such evaluation for fiscal year 2014 or at any time prior to the events leading up to this lawsuit.

***The Board and Dr. Breuder Agree to an Early Termination of the Employment Contract***

25.     Beginning in or around late 2014, the Board and Dr. Breuder began discussions concerning Dr. Breuder's continued service to the College of DuPage and the Board's preference to terminate Dr. Breuder's employment prior to June 30, 2019.

26.     Through December 2014 and January 2015, the Board and Dr. Breuder negotiated a fourth addendum to the Employment Contract that provided for early termination of Dr. Breuder's employment in exchange for certain retirement benefits.

27.     On January 28, 2015, the Board voted on and approved by a vote of six-to-one the fourth addendum to the Employment Contract (hereinafter, the "January 2015 Agreement"). A true and correct copy of the January 2015 Agreement is attached hereto as Exhibit C.

28.     In relevant part, the January 2015 Agreement provided that Dr. Breuder would continue to serve as President of the College of DuPage until March 30, 2016, on which date it was agreed that Dr. Breuder would retire from his post. In exchange, it was agreed that Dr. Breuder would receive a lump sum payment upon his retirement. *See generally id.*

29.     The January 2015 Agreement also provided that all terms of Dr. Breuder's Employment Contract that were not expressly superseded by the January 2015 Agreement would

remain in effect through March 30, 2016. *Id.* ¶ 4. Such terms included the termination provisions of the Employment Contract.

30.     The January 2015 Agreement was a duly authorized and enforceable agreement under Sections 3-26 (cited above) and 3-31 of the Act. Section 3-31 grants the Board authority "[t]o provide for or participate in provisions for insurance protection and benefits for its employees and their dependents, including but not limited to retirement annuities, medical, surgical and hospital benefits, in such types and amounts as shall be determined by the board for the purpose of aiding in securing and retaining the services of competent employees." 110 ILCS 805/3-31; *see also* 110 ILCS 805/3-30.

31.     In accordance with the Board's authority under the Act, the January 2015 Agreement conferred and established in Dr. Breuder a property interest in his continued employment from January 28, 2015 through March 30, 2016. The January 2015 Agreement also conferred and established in Dr. Breuder a property interest in all benefits provided for under the Agreement, including the lump sum payment to be made to Dr. Breuder upon his retirement. Thus, the Board could not terminate Dr. Breuder's employment or rescind the benefits conferred in the January 2015 Agreement without due process or in contravention of the terms of the January 2015 Agreement and the Employment Contract.

***Defendant Hamilton Maliciously Tarnished Dr. Breuder's Professional Reputation and Acted to Interfere With His Contractual and Constitutional Rights Solely For Personal Interests and Political Aspirations***

32.     Since early 2014, Defendant Hamilton has engaged in a malicious and wrongful scheme to tarnish Dr. Breuder's professional reputation and, ultimately, to interfere with and deprive Dr. Breuder of his contractual and constitutional rights. That scheme has been motivated not by Defendant Hamilton's official duties as an elected member of the Board, but rather by her

personal interests and political agenda.

33.    Defendant Hamilton was elected to serve as a member of the Board in April 2013. Prior to April 2013, Defendant Hamilton never held any elected or political office, nor had any ties to the College of DuPage. Upon her election, Defendant Hamilton told Dr. Breuder and Thomas Glaser, Senior Vice President of Administration, that her motivation for running for the Board was to use the position to attain higher political office. Defendant Hamilton stated that she planned to achieve that goal by finding something wrong with the College, specifically by using her purported experience as a CPA to find irregularities in the College's finances and spending.

34.    On information and belief, throughout late-2013 and to this day, Defendant Hamilton has worked closely with her political advisor, Chris Robling, to develop a strategy to advance her personal interests and political agenda. That strategy has been focused on posturing Defendant Hamilton as a "reformist" of the College and discrediting and slandering the former Board and College administration, especially Dr. Breuder, through false claims of unprofessional and unethical conduct, mismanagement, and fraudulent and abusive spending practices.

35.    In or about May 2014, Defendant Hamilton partnered with the political watchdog organization For the Good of Illinois, founded by Adam Andrzejewski, and devised a plan to use For the Good of Illinois to publicly discredit the professional and ethical conduct of the former Board and College administration.

36.    On or about May 9, 2014, Defendant Hamilton leaked to Andrzejewski a confidential and privileged email between Dr. Breuder and the Board relating to the potential use of a $20 million state grant for a proposed Teaching and Learning Center. Defendant Hamilton knew or had been advised that the contents of this email would be sensationalized in a manner to tarnish the professional and ethical credibility of Dr. Breuder and the former Board.

13

37.    On May 20, 2014, after receiving information about the May 9 email from Defendant Hamilton, Andrzejewski issued a Freedom of Information Act ("FOIA") request to the College. Andrzejewski's FOIA request sought all of Dr. Breuder's email communications dated from May 6 to May 19, 2014. No other documentation was sought by Andrzejewski's FOIA request.

38.    On or about May 22, 2014, Defendant Hamilton invited Andrzejewski to speak at that day's regular meeting of the Board. During the meeting, Andrzejewski publicly attacked Dr. Breuder's credibility and ethical fulfillment of his duties as President of the College of DuPage. At the close of his remarks, Andrzejewski stated, "I challenge Dr. Breuder, please leave and do something good for the people of Illinois." On information and belief, Defendant Hamilton knew of, agreed to, and spoke with Andrzejewski regarding his comments prior to the meeting.

39.    On or about June 24, 2014, Andrzejewski received a copy of the May 9 email through his FOIA request. Andrzejewski immediately sent the email to the *Chicago Tribune* and also published the email on For the Good of Illinois' website. The email was sensationalized as evidence of corruption within the College and a "seedy money grab" on the part of Dr. Breuder. On information and belief, Defendant Hamilton knew of, agreed to, or participated directly in Andrzejewski's distribution and publication of the email.

40.    On or around June 26, 2014, Defendant Hamilton invited Andrzejewski to speak at that day's special meeting of the Board. During his public comments, Andrzejewski impugned Dr. Breuder and the former Board for the contents of the May 9 email, describing Dr. Breuder's statements in the email as "disgusting" and a "concoct[ed] scheme to secure funding." Andrzejewski further stated, "[W]e know our culture of corruption. This email spells it out and [Dr. Breuder] spells it out to you." On information and belief, Defendant Hamilton knew of,

agreed to, and spoke with Andrzejewski regarding his comments prior to the meeting.

41.     Defendant Hamilton thereafter capitalized upon the distortion of the May 9 email as a means of furthering her personal interests and political agenda. Starting in July 2014, Defendant Hamilton began participating in interviews and providing commentary to various media outlets, including the *Chicago Tribune* and the *Daily Herald*, that were focused on wrongfully discrediting the former Board and Dr. Breuder's professional and ethical administration of the College of DuPage.

42.     On July 10, 2014, Defendant Hamilton penned an op-ed that harshly criticized the former Board and Dr. Breuder regarding the issues underlying the May 9 email. Defendant Hamilton's comments were crafted solely as a means of political gamesmanship, as evidenced by the fact that on May 21, 2014, just outside of the window of Andrzejewski's FOIA request, Defendant Hamilton wrote to Dr. Breuder indicating her support of the Teaching and Learning Center proposed in the May 9 email.

43.     On August 26, 2014, Defendant Hamilton participated in a radio interview with Andrzejewski on the *Joe Walsh Show* to discuss the May 9 email and other events at the College of DuPage. During the interview, Andrzejewski made several statements that falsely implicated Dr. Breuder with corruption, fraud, and abusive management of the College. Defendant Hamilton indicated support and agreement with Andrzejewski's comments. Defendant Hamilton herself stated that Dr. Breuder "has a fiefdom."

44.     In December 2014, Defendant Hamilton provided comment for an editorial penned by Andrzejewski and published in the *Huffington Post*. In the editorial, Andrzejewski quoted Defendant Hamilton: "Thanks to the professors, College of DuPage is one of the nation's top community colleges. But the lack of administrative executive ethics has been troubling.

Ethical business practices haven't been a part of COD governance for a very long time . . . . Therefore, all the groups are helping to squeeze out corrupt practices." Defendant Hamilton's comments were directed at Dr. Breuder.

45.     On January 22, 2015, during a regular meeting of the Board, Defendant Hamilton stated publicly that the January 2015 Agreement reached between the Board and Dr. Breuder constituted a "golden parachute" and "wanton betrayal of [DuPage County] constituents" and that the College of DuPage should "show Dr. Breuder the door." Defendant Hamilton's comments were coupled by baseless accusations of improprieties and mismanagement by Dr. Breuder, including a groundless allegation that Dr. Breuder permitted fraudulent and criminal activity to occur at the College. Defendant Hamilton's comments are another example of her political gamesmanship, as these comments were made despite her earlier approval of the January 2015 Agreement during closed meetings of the Board.

46.     On January 28, 2015, Defendant Hamilton participated in a televised interview on *Chicago Tonight*. During the interview, Defendant Hamilton stated that Dr. Breuder should be "outright fired." Defendant Hamilton supported her opinion by improperly implicating Dr. Breuder in unprofessional and unethical conduct. Defendant Hamilton even attacked Dr. Breuder's personal character, falsely describing Dr. Breuder as "intimidating" and "being very cruel to people in a very unacceptable way."

47.     Following the events of January 2015, Defendant Hamilton made it her mission to "claw back" Dr. Breuder's January 2015 Agreement and wrongfully terminate his employment through any means possible. Defendant Hamilton's resolve to terminate Dr. Breuder, by any means, can be summed up by a quote published by the *Daily Herald* on March 9, 2015: "Asked about the possibility that an attempt to oust Robert Breuder without pay could provoke a lawsuit

that entwines the college in expensive litigation, Hamilton said, 'Let him sue us.'" Defendant Hamilton also has been reported as having a vendetta against Dr. Breuder based on his actions in posting a Board-approved censure of Defendant Hamilton on the Board's website in mid-2014.

48.     From late-January 2015 through Dr. Breuder's wrongful termination, Defendant Hamilton pursued her mission by continuing to publicly impugn and discredit Dr. Breuder's professional and ethical reputation. Defendant Hamilton not only has falsely accused Dr. Breuder of mismanaging the College, but also has maliciously implicated Dr. Breuder in corruption and fraud. Defendant Hamilton has made these accusations in her official capacity, including in her current position as Board Chairman. Defendant Hamilton's accusations, many of which have been made during public meetings of the Board, have been recorded and published on the Board's website or through external media outlets.

49.     Defendant Hamilton's accusations were made with negligent and even reckless disregard for the truth, were unreasonable under the circumstances, and were not rationally related to the fulfillment of her official duties or the administration of the College. In fact, when questioned by the *Daily Herald* in June 2015 about the validity of the many accusations charged against Dr. Breuder and his administration of the College, as reported upon by the media, Defendant Hamilton stated that a lot of it was "political" and "an exaggeration." Yet, the Board has based Dr. Breuder's wrongful termination on these political and exaggerated accusations.

50.     Defendant Hamilton's conduct has resulted in severe damage to Dr. Breuder's professional reputation. Multiple dozens of articles have been published about Dr. Breuder by several media outlets, including the *Chicago Tribune*, *Washington Post*, *USA Today*, and *Inside Public Higher Education*, and many of those articles have portrayed Dr. Breuder as greedy, corrupt, unethical, and unprofessional. Defendant Hamilton instigated such portrayals, and as a

result of her wrongful conduct, Dr. Breuder has lost speaking and consulting engagements, was removed from a professional advisory board, and was declined an already-awarded alumni award from his undergraduate alma mater. He also has been shunned from the academic community.

***Defendant Hamilton Recruits Defendants Mazzochi, Napolitano, and Bernstein to Assist in Pursuing Her Personal and Political Agenda to Terminate Dr. Breuder***

51.     In or around February 2015, Defendant Hamilton reported to the public and to various media outlets that she intended to achieve her goal of terminating Dr. Breuder's employment by taking over the Board through the upcoming April 2015 elections and then acting to "accelerate" Dr. Breuder's dismissal.

52.     Throughout February 2015, Defendant Hamilton recruited potential candidates to run for the Board to assist her in terminating Dr. Breuder. By March 2015, Defendant Hamilton had found and began publicly endorsing her slate of candidates: Defendants Mazzochi, Napolitano, and Bernstein. Defendants Mazzochi, Napolitano, and Bernstein ran for election on a "Clean Slate" platform that was primarily focused on "end[ing] Breuder-era corruption" and "claw[ing] back as much of President Breuder's $763,000 as legally possible."

53.     Defendant Hamilton used her official position to promote and endorse the so-called "Clean Slate" platform. Defendant Hamilton attended several "Clean Slate" campaigning events in her official capacity and, on information and belief, personally contributed between $80,000 and $100,000 to the "Clean Slate" campaign. On March 31, 2015, Defendant Hamilton participated in a televised interview that aired on CLTV's *Politics Tonight* in which she stated her endorsement of a "slate of candidates" who could help her "clean up" the College of DuPage.

54.     On April 2, 2015, Defendants Mazzochi, Napolitano, and Bernstein were elected to the Board. Without hesitation, Defendants Mazzochi, Napolitano, and Bernstein used their election to promote the false charges that they had made against Dr. Breuder during their

campaigns. On the night of the election, Defendants Mazzochi, Napolitano, and Berstein issued the following statement to the press: "Tonight, they gave us a clear mandate to clean up the College of DuPage . . . . To finally stop the waste, fraud and abuse. . . ." Defendant Bernstein separately stated, "In order to do that, we have to stop the corruption . . . ."

55.     Defendant Hamilton seconded Defendants Mazzochi, Napolitano, and Bernstein's statement, commenting to CBS Chicago on the night of the election: "I am absolutely thrilled. I just feel the community has spoken, and they've spoken out against fraud, waste, and abuse; and they've spoken for good government."

56.     Ironically, since the election, Defendants Hamilton, Mazzochi, Napolitano, and Bernstein, and the "Clean Slate" Political Action Committee have had five complaints filed against them collectively with the State Board of Elections for violations of campaigning disclosure requirements. In addition, on April 2, 2015, the College's Internal Auditor issued a report finding that Defendant Hamilton's endorsement of the "Clean Slate" candidates violated the College's ethics policies, specifically through her participation in prohibited political activity while acting in her official capacity as Vice-Chairman of the Board.

*Defendants Hamilton, Mazzochi, Napolitano, and Bernstein Immediately Placed Dr. Breuder on Indefinite Administrative Leave*

57.     On April 28, 2015, Defendants Mazzochi, Napolitano, and Bernstein began their terms as trustees of the Board.

58.     In the late afternoon of April 28, 2015, Dr. Breuder received a letter from Defendants Hamilton, Mazzochi, Napolitano, and Bernstein that directed Dr. Breuder to organize a special meeting of the Board to be convened on April 30, 2015 at 8:00 p.m. The letter included a proposed agenda for the special meeting that listed the following item of new business for approval: "Placement of President Dr. Robert L. Breuder on Paid Administrative Leave;

Appointment of Dr. Joseph Collins to Serve as Acting Interim President of the College." The letter threatened that if Dr. Breuder did not implement the enclosed agenda, disciplinary or other action would be taken against Dr. Breuder. A true and correct copy of the April 28, 2015 letter and the accompanying proposed agenda are attached hereto as Exhibit D.

59.     On April 30, 2015, at approximately 7:20 p.m., an organizational meeting of the Board took place pursuant to Section 3-8 of the Act to elect new officers of the Board. At the organizational meeting, Defendants Hamilton, Mazzochi Napolitano, and Bernstein nominated and voted each other into officer positions. Defendant Hamilton was appointed Chairman. Defendant Mazzochi was appointed Vice Chairman. Defendant Napolitano was appointed Secretary. Board Trustees Erin Birt, Joseph Wozniak, and Dianne McGuire voted against each of these appointments. A true and correct copy of the minutes of the Board's April 30, 2015 organizational meeting are attached hereto as Exhibit E.

60.     On April 30, 2015, at approximately 9:03 p.m., the Board began its special meeting pursuant to the agenda pushed through by Defendants Hamilton, Mazzochi, Napolitano, and Bernstein. At the special meeting, a motion was heard to adopt Resolution No. 15-430-2 to immediately place Dr. Breuder on paid administrative leave (which included banning Dr. Breuder from the College) and to appoint Dr. Joseph Collins as Acting Interim President. Defendants Hamilton, Mazzochi, Napolitano, and Bernstein voted in favor of the resolution. All other Board trustees voted against the resolution. The resolution was approved and immediately enforced. True and correct copies of the minutes of the Board's April 30, 2015 special meeting and Resolution No. 15-430-2 are attached hereto as Exhibits F and G, respectively.

61.     Contemporaneous with the vote on Resolution No. 15-430-2, Defendant Hamilton commented to the public that "The College of DuPage has been through tough times—times

marked by extraordinary and continuous denial. Those troubles are not yet over, but the cause of those troubles are." Defendant Hamilton was unmistakably and maliciously referring to Dr. Breuder as the cause of the College's troubles.

62.     The Board's adoption of Resolution No. 15-430-2 violated the January 2015 Agreement, the Employment Contract, and Dr. Breuder's due process rights.

63.     The Board's adoption of Resolution No. 15-430-2 was not authorized by any contract provision, statute, administrative rule, or Board policy governing Dr. Breuder's employment.

64.     The Board lacked any rational basis to adopt Resolution No. 15-430-2, as the circumstances giving rise to the adoption of the resolution were baseless, frivolous, and motivated solely by Defendants Hamilton, Mazzochi, Napolitano, and Bernstein's personal and political agendas.

65.     The adoption of Resolution No. 15-430-2 followed months of false accusations and slanderous statements made by Defendants Hamilton, Mazzochi, Napolitano, and Bernstein that charged Dr. Breuder with unprofessional, unethical, and criminal conduct. Defendants Hamilton, Mazzochi, Napolitano, and Bernstein's accusations were made maliciously and with negligent and even reckless disregard for the truth.

66.     Defendants Hamilton, Mazzochi, Napolitano, and Bernstein's conduct was unreasonable under the circumstances and was not rationally related to the fulfillment of their official duties or to the administration of the College.

67.     At no time prior to the Board's adoption of Resolution No. 15-430-2 was Dr. Breuder afforded any opportunity to respond to the false accusations and slanderous comments underpinning the adoption of the resolution. Nor was Dr. Breuder provided an opportunity to

present reasons, either in person or writing, as to why Resolution No. 15-430-2 was inappropriate. In fact, the Board effectively had prohibited Dr. Breuder from being heard or from clearing his name of the accusations charged against him.

68.     On February 25, 2015, the Board had issued a directive to Dr. Breuder to "not respond, distribute or release any statement and/or communicate orally or in writing with the media until further notice . . . ." The Board lifted this order on April 2, 2015, but only to permit Dr. Breuder to speak with the College's public relations consultant. Dr. Breuder remained prohibited from speaking directly to the media and the public until his termination on October 20, 2015.

69.     The adoption of Resolution No. 15-430-2 under the circumstances had a grossly unfair and damaging effect on Dr. Breuder's reputation. Since the adoption of Resolution No. 15-430-2, Dr. Breuder has been shunned from the academic community, has been demonized and disparaged throughout the State of Illinois, has had already-awarded awards rescinded, and has been denied professional speaking and consultation opportunities.

*Defendants Hamilton, Mazzochi, Napolitano, and Bernstein Also Devised **a Plan to Terminate Dr. Breuder in Contravention of Contractual and Constitutional Rights***

70.     Following the adoption of Resolution No. 15-430-2, the Board, now led by Defendants Hamilton, Mazzochi, Napolitano, and Bernstein, immediately began devising a plan to terminate Dr. Breuder's employment in violation of his contractual and constitutional rights.

71.     On April 30, 2015, Defendants Hamilton, Mazzochi, Napolitano, and Bernstein voted on, and the Board approved by their majority vote, Resolution No. 15-430-5A to retain the law firm Rathje & Woodward, LLC to represent the Board in a variety of matters, including matters related to Dr. Breuder's employment. *See* Exh. F. Defendants Hamilton, Mazzochi, Napolitano, and Bernstein also voted on, and the Board approved by their majority vote,

Resolution No. 15-430-6 to have the law firm Schuyler, Roche & Crisham, P.C. conduct an internal investigation of the College of DuPage. *See* Exh. F.

72.     Resolution Nos. 15-430-5A and 15-430-6 violated Board Policy Nos. 5-30, 10-60, and 15-25, as well as Illinois Rules of Professional Conduct 1.7, 1.8, and 1.9. These resolutions also had the effect of violating Dr. Breuder's constitutionally protected rights.

73.     The impropriety of the Board's retention of Rathje & Woodward is demonstrated, in part, by the fact that on January 27, 2015, Rathje & Woodward filed a lawsuit for injunctive and declaratory relief against the Board in the Illinois Circuit Court for DuPage County. That lawsuit was filed on behalf of For the Good of Illinois, Edgar County Watchdogs, Adam Andrzejewski, Kirk Allen, and John Kraft. The subject matter of the lawsuit related to the lawfulness of the Board's approval of Dr. Breuder's January 2015 Agreement. A true and correct copy of the Complaint filed in this lawsuit is attached hereto as Exhibit H.

74.     The impropriety of Board's retention of Schuyler, Roche & Crisham is evidenced, at least, by Defendant Hamilton's relationship with Daniel Kinsella of Schuyler, Roche & Crisham. Mr. Kinsella has represented Defendant Hamilton in her personal capacity at times relevant to this lawsuit, including with respect to Defendant Hamilton's dealings with the Board. Mr. Kinsella was appointed to lead the investigation authorized by Resolution No. 15-430-6, which was instituted solely to fish for information to support Defendants Hamilton, Mazzochi, Napolitano, and Bernstein's determination to wrongfully terminate Dr. Breuder.

75.     Defendant Hamilton has admitted that the retention of Rathje & Woodward and Schuyler, Roche & Crisham was meant solely to ensure that the Board would fulfill the political agendas of Defendants Hamilton, Mazzochi, Napolitano, and Bernstein. On May 4, 2015, Defendant Hamilton appeared on *Chicago Tonight* and stated that "the most important thing is

not necessarily optics [i.e., the impropriety of these retentions] but solving the problem, . . . hiring the right people to solve the problem is the right optics." The "right people" were people who Defendants Hamilton, Mazzochi, Napolitano, and Bernstein believed would do what was necessary to fulfill their determination to wrongfully terminate Dr. Breuder.

76.     Since April 30, 2015, the Board, through Mr. Kinsella, has conducted the internal investigation authorized by Resolution No. 15-430-6 akin to a witch-hunt. On one weekend in May 2015, Mr. Kinsella and his team ransacked the office of Dr. Breuder's longtime secretary in search of information that Defendants Hamilton, Mazzochi, Napolitano, and Bernstein could use to support their wrongful efforts to terminate Dr. Breuder. Mr. Kinsella and his team have conducted similar searches of Dr. Breuder's former office and the offices of several other administrative staff.

77.     By August 2015, the internal investigation authorized by Resolution No. 15-430-6 had uncovered no evidence or information supporting Dr. Breuder's termination. As a result, the Board was forced to pursue other avenues of terminating Dr. Breuder's employment, including acting to wrongfully void his Employment Contract and related agreements.

78.     On August 20, 2015, Defendants Hamilton, Mazzochi, Napolitano, and Bernstein voted on, and the Board approved by their majority vote, a motion to authorize the Board to request that the DuPage County State's Attorney enforce a non-binding Illinois Attorney General opinion, dated July 24, 2015, which opined that the Board's approval of the third addendum to Dr. Breuder's Employment Contract partially violated the Open Meetings Act ("AG Opinion"). A true and correct copy of the minutes from the August 20, 2015 Board meeting are attached hereto as Exhibit I.

79.     On August 21, 2015, Defendant Hamilton wrote to the DuPage County State's

Attorney requesting that the State's Attorney issue a binding opinion enforcing the AG Opinion. The purpose of the August 21, 2015 letter was to seek legal authority to void Dr. Breuder's Employment Contract and enable the Board to terminate Dr. Breuder's employment without cause or due process of the law. A true and correct copy of the draft letter approved by the Board on August 20, 2015 is attached hereto as Exhibit J.

80.     On September 11, 2015, the State's Attorney responded to the August 21 letter and denied the Board's request to enforce the AG Opinion. In denying the request, the State's Attorney provided a detailed analysis of the AG Opinion and the enforceability of actions made in violation of the Open Meetings Act. Pursuant to controlling Illinois law, the State's Attorney determined that the third addendum to Dr. Breuder's Employment Contract was not void due to the violation stated in the AG Opinion. A true and correct copy of the State Attorney's September 11, 2015 letter is attached hereto as Exhibit K.

81.     Nonetheless, on September 17, 2015, Defendants Hamilton, Mazzochi, Napolitano, and Bernstein then voted on, and the Board approved by their majority vote, a resolution to declare Dr. Breuder's Employment Contract and all related agreements, including the January 2015 Agreement, void *ab initio.* The Board's resolution was not supported by any contract provision, statute, or other legal authority. A true and correct copy of the Board's resolution to void Dr. Breuder's employment agreements, excerpted from the packet for the September 17, 2015 Board meeting, is attached hereto as Exhibit L.

82.     Immediately preceding the September 17 vote, Defendant Hamilton maliciously commented to the public that Dr. Breuder's employment agreements were an "outrage" and "blatant" attempts to defy the voters. Defendant Hamilton also made several comments signifying that Dr. Breuder had maliciously and unlawfully forced prior Boards into executing

25

his employment agreements. These statements were unreasonably, maliciously, and recklessly made and had no basis in fact or law.

83.     Defendant Mazzochi also made similarly baseless comments prior to the vote. Defendant Mazzochi defended the resolution as being supported by the opinions of the Attorney General, the State's Attorney, and several Illinois legislators who all believed that Dr. Breuder's employment agreements were void due to violations of the Open Meetings Act. Defendant Mazzochi failed to inform the public that only one of Dr. Breuder's employment agreements (the third addendum) was opined to have violated the Open Meetings Act and that the State's Attorney informed the Board that the third addendum was not void due to that violation. Defendant Mazzochi's comments were knowingly and intentionally misleading and maliciously made to rally public support against Dr. Breuder and in favor of the Board's wrongful actions.

84.     At the time the Board voted on the resolution, Dr. Breuder remained on forced administrative leave pursuant to Resolution No. 15-430-2, which prohibited Dr. Breuder from vising the campus and, consequently, from attending any and all Board meetings. As a result, Dr. Breuder was denied his right to be heard, either in person or in writing, on the legality or appropriateness of the resolution. Dr. Breuder also was denied the right to clear his name of the various accusations the Board made against him prior to voting on the resolution.

85.     In addition to the actions described above, the Board proceeded to conduct sham termination proceedings against Dr. Breuder. On August 20, 2015, Defendants Hamilton, Mazzochi, Napolitano, and Bernstein voted on, and the Board approved by their majority vote, a motion to authorize the Board to proceed with termination proceedings of Dr. Breuder. Exh. I.

86.     Prior to that vote, Board Trustee Dianne McGuire warned that the actions of Defendants Hamilton, Mazzochi, Napolitano, and Bernstein with respect to Dr. Breuder lacked a

valid and legal basis. Trustee McGuire's comments were based, in part, on discussions that had taken place during the immediately preceding closed session of the Board. *See id.* Trustee McGuire's comments also are supported by a recording of a January 2015 closed session of the Board, that was leaked to the public in July 2015, which reveals that the Board's then-outside counsel provided an advisory opinion on the legality of terminating Dr. Breuder and advised the Board that there was no legal or factual basis to terminate Dr. Breuder.

87.     On September 17, 2015, Defendants Hamilton, Mazzochi, Napolitano, and Bernstein voted on, and the Board approved by their majority vote, the appointment of Joseph A. Morris to preside over the termination proceedings as the Hearing Officer. Due to controversy over the appointment of Mr. Morris, on September 28, 2015, the Board voted on and approved the appointment of a new Hearing Officer.

88.     The Board's appointment of a Hearing Officer was not intended to provide Dr. Breuder the opportunity to be heard by an impartial tribunal. The Board's resolution appointing a Hearing Officer makes clear that Hearing Officer's only role was to receive evidence during the termination hearing. The Hearing Officer was not intended to have the right or ability to make a recommendation to the Board or to provide any input on the termination decision, as that decision was to remain solely in the hands of the Board. A true and correct copy of the Board's resolution appointing a hearing officer, excerpted from the packet for the September 28, 2015 Board meeting, is attached hereto as Exhibit M.

89.     In addition to the above, Defendants Hamilton, Mazzochi, Napolitano, and Bernstein attempted to support their wrongful actions by making various false statements during several public Board meetings between May and October 2015 that were intended to impugn Dr. Breuder's credibility, professionalism, and ethics. Such statements falsely charged Dr. Breuder

with mismanagement, misuse of public funds, fraudulent financial and business practices, and corruption. These statements were made maliciously, with negligent and even reckless disregard for their truth, and were not rationally related to the fulfillment of Defendants Hamilton, Mazzochi, Napolitano, and Bernstein's duties as Board trustees. These statements have been recorded and posted on the Board's website and have been reported upon by various media outlets, including the *Chicago Tribune* and the *Daily Herald.*

***The Board Terminated Dr. Breuder In Violation of His Contractual and Constitutional Rights***

90.     The Board, led by Defendants Hamilton, Mazzochi, Napolitano, and Bernstein, consciously and deliberately chose not to provide Dr. Breuder with a termination procedure or hearing that complied with the terms of his Employment Contract or even with the basic requirements of due process. In fact, despite the Board's various resolutions indicating that Dr. Breuder would be provided a hearing prior to his termination, the Board ultimately decided to deny Dr. Breuder any hearing or meaningful opportunity to be heard prior to his termination.

91.     On August 27, 2015, nearly four months after being forced on administrative leave, the Board sent Dr. Breuder a package of loose documents with a simple cover letter stating that the Board's attorneys could meet with Dr. Breuder the following week. The cover letter provided no explanation of why the documents were being sent, what they represented, or even why the Board's attorneys wanted to meet with Dr. Breuder. A true and correct copy of the August 27, 2015 letter is attached hereto as Exhibit N.

92.     On August 31, 2015, Dr. Breuder, through his legal counsel, responded to the Board's August 27 letter, requesting the reason for the proposed meeting and informing the Board that Dr. Breuder could not meet with the Board's attorneys the following week. A true and correct copy of the August 31, 2015 letter is attached hereto as Exhibit O.

93.     Dr. Breuder never received a response to his August 31 letter.

94.     On September 24, 2015, the Board sent Dr. Breuder a letter purporting to give him notice of the charges upon which the Board would decide whether to proceed with his termination. A true and correct copy of the September 24, 2015 letter is attached hereto as Exhibit P.

95.     On September 28, 2015, Dr. Breuder, through his legal counsel, responded to the September 24 letter. Dr. Breuder objected to the Board's conduct as being in violation of his due process rights and in breach of the terms of his Employment Contract. Without waiving these objections, Dr. Breuder informed the Board that he would participate in a termination hearing and requested that he and the Board discuss a mutually agreeable date for such a hearing. A true and correct copy of the September 28, 2015 letter is attached hereto as Exhibit Q.

96.     On October 1, 2015, the Board, through its legal counsel, responded to Dr. Breuder's September 28 letter. The Board confirmed that it would not comply with the terms of Dr. Breuder's Employment Contract. The Board further stated that Dr. Breuder is not "entitle[d] to the elements of due process." The Board then stated that Dr. Breuder could provide a written response to the Board's charges and that the Board would consider this written response prior to making its final decision. The Board's letter ignored Dr. Breuder's request to schedule a hearing date. A true and correct copy of the October 1, 2015 letter is attached hereto as Exhibit R.

97.     On October 5, 2015, Dr. Breuder, through his legal counsel, responded to the October 1 letter. Dr. Breuder set forth his objections to the Board's actions and urged the Board to comply, at the very least, with his constitutional rights. Dr. Breuder requested that the Board specify the procedure for the termination hearing, as it appeared from the October 1 letter that Dr. Breuder would not be permitted to attend the hearing or to present evidence or witnesses to

refute the Board's charges. Dr. Breuder further objected that if all Board trustees were permitted to vote on Dr. Breuder's termination, the Board's action would violate Dr. Breuder's right to be heard by a fair and impartial tribunal. A true and correct copy of the October 5, 2015 letter is attached hereto as Exhibit S.

98.     On October 12, 2015, the Board, through its legal counsel, responded to the October 5 letter. The Board's response ignored all of the concerns and objections raised by Dr. Breuder's October 5 letter. The Board's letter made clear that Dr. Breuder would not be permitted to attend the Board's hearing, if one even was intended to occur, and that Dr. Breuder's only opportunity to respond to or refute the Board's charges would be through a written letter that had to be sent by October 16, 2015. A true and correct copy of the October 12, 2015 letter is attached hereto as Exhibit T.

99.     On October 16, 2015, Dr. Breuder, through his legal counsel, responded to the October 12 letter. Dr. Breuder again stated his objections to the Board's actions and urged the Board to comply with his basic due process right to a fair hearing by an impartial tribunal. Dr. Breuder made clear that in light of the Board's conduct, and especially the resolve of Defendants Hamilton, Mazzochi, Napolitano, and Bernstein to terminate Dr. Breuder, the Board's offer to "consider a written response from Dr. Breuder prior to making a decision" was not meaningful and did not comply with Dr. Breuder's contractual or constitutional rights. A true and correct copy of the October 16, 2015 letter is attached hereto as Exhibit U.

100.    Not less than a few hours after the Board's receipt of the October 16 letter, the Board posted on its website a notice of special meeting to take place on October 20, 2015, at 6 p.m. The Board's proposed agenda, which was simultaneously posted, included as the sole substantive agenda item a "Resolution to Terminate the Employment of the College President."

The resolution was attached to the agenda and included all the charges previously listed in the Board's September 24 letter. True and correct copies of the Board's Meeting Notice and Proposed Agenda are attached hereto as Exhibit V.

101.    On October 20, 2015, Defendants Hamilton, Mazzochi, Napolitano, and Bernstein voted on, and the Board approved by their majority vote, the "Resolution to Terminate the Employment of the College President." Board Trustee Diane McGuire voted against the resolution. Board Trustees Erin Birt and Joseph Wozniak were absent. Contemporaneous with the vote, Defendant Hamilton stated, "We promised to end fraud, waste and abuse at the College of DuPage. By ending this chapter, this board has kept that promise."

102.    The Board's termination of Dr. Breuder resulted in a deprivation of Dr. Breuder's property and liberty interests without due process of the law. The Board's termination of Dr. Breuder was also in violation of the January 2015 Agreement and his Employment Contract.

103.    As set forth above, at no time prior to October 20, 2015, did the Board offer Dr. Breuder a hearing or a meaningful opportunity to respond to or refute the charges underlying Dr. Breuder's termination. In fact, despite the various Board resolutions that suggested that a hearing would take place, the Board denied Dr. Breuder's requests for a hearing. That denial occurred despite the fact that the Board, through the actions of Defendants Hamilton, Mazzochi, Napolitano, and Bernstein, had publicly accused Dr. Breuder of unprofessional, unethical, and even criminal conduct during its sham "termination proceedings" and prior to his termination.

104.     The Board also denied Dr. Breuder of his right to have his termination decided by a fair and impartial tribunal. Despite the very clear bias of Defendants Hamilton, Mazzochi, Napolitano, and Bernstein, all Board trustees were permitted to vote on Dr. Breuder's termination. The only Board trustees to vote in favor of Dr. Breuder's termination were

Defendants Hamilton, Mazzochi, Napolitano, and Bernstein.

105. The Board's termination of Dr. Breuder was arbitrary, capricious, and unreasonable under the circumstances. Defendants Hamilton, Mazzochi, Napolitano, and Bernstein had decided to wrongfully terminate Dr. Breuder long before October 20, 2015, based solely on their personal interests and political agendas. The charges outlined in the Board's September 24 letter and October 20 resolution are baseless and nothing more than pretext for Defendants Hamilton, Mazzochi, Napolitano, and Bernstein's predetermination to terminate Dr. Breuder.

**COUNT I**
**DUE PROCESS VIOLATION**
**(Property Interest)**

106. Plaintiff incorporates by reference paragraphs 1 through 105 of this Complaint as paragraph 106 of Count I of this Complaint.

107. Pursuant to the January 2015 Agreement, the Employment Contract, and Board policies, Dr. Breuder has a property interest and present entitlement in his employment as the President of the College of DuPage.

108. Dr. Breuder also has a property interest and entitlement to certain compensation and benefits, including deferred compensation, an agreed upon lump sum payment to be paid upon Dr. Breuder's retirement from the College of DuPage, and other retirement benefits conferred through the January 2015 Agreement and Employment Contract.

109. Under the Fourteenth Amendment to the United States Constitution, Dr. Breuder cannot be deprived of these interests without adequate due process protections, including notice of the charges against him, notice of the evidence upon which the charges will be based, and a chance to present witnesses and confront adverse evidence at fair hearing before an impartial

tribunal.

110.    Dr. Breuder was entitled to the full range of due process protections prior to his termination because the State of Illinois does not provide adequate post-termination procedures for a person in Dr. Breuder's position. The only state remedy available to Dr. Breuder is a common law *writ of certiorari* or breach of contract action. A common law *writ of certiorari* is inadequate here since the Board denied Dr. Breuder a pre-termination hearing.

111.    The Board has deprived Dr. Breuder of his property rights without due process through at least the following actions:

a.  placing Dr. Breuder on forced administrative leave, thereby revoking his right to act as President of the College of DuPage, without providing Dr. Breuder adequate notice, a reasonable basis for the decision, or an opportunity to be heard;

b.  declaring Dr. Breuder's Employment Contract and the January 2015 Agreement void *ab initio*, without providing Dr. Breuder adequate notice, a reasonable basis for the decision, or an opportunity to be heard;

c.  publicly announcing the Board's intention to terminate Dr. Breuder based on false charges of unprofessional, unethical, and even criminal conduct without first providing notice of those charges or an opportunity to refute those charges;

d.  voting on a resolution to conduct a sham and pre-textual termination hearing;

e.  denying Dr. Breuder's requests for a pre-termination hearing that complied with Dr. Breuder's due process rights;

f.  denying Dr. Breuder any meaningful opportunity to be heard or to respond to the Board's charges prior to his termination;

g.  permitting all Board trustees, including trustees who are biased and prejudiced

toward Dr. Breuder, to vote on Dr. Breuder's termination;

h. basing Dr. Breuder's termination on charges that are pre-textual, unsubstantiated, and which do not provide cause for his termination.

112.    The Board's actions in terminating Dr. Breuder have deprived him of adequate notice of the evidence upon which the charges against him are based, a chance to present witnesses and evidence at a hearing to refute the charges against him, and the right to be heard by and have his termination decided by an impartial tribunal.

113.    The Board's decision to terminate Dr. Breuder was arbitrary, capricious, and unreasonable under the circumstances. Defendants Hamilton, Mazzochi, Napolitano, and Bernstein's decision to terminate Dr. Breuder was malicious, had no reasonable basis in fact, and was motivated solely by their personal interests and political agendas.

114.    Defendants Hamilton, Mazzochi, Napolitano, and Bernstein are not entitled to qualified immunity as they acted to deny Dr. Breuder of his constitutional rights while knowing that such rights were owed to Dr. Breuder under clearly established law. Specifically, Defendants knew that Dr. Breuder was entitled, at the very least, to the opportunity to be heard by and to have his termination decided by an impartial tribunal.

115.    As a result of Defendants violation of Dr. Breuder's due process rights, Dr. Breuder has suffered substantial injury, including but not limited to the following:

a. Dr. Breuder has been denied the full value of his Employment Contract and the January 2015 Agreement.

b. Dr. Breuder will be unable to find or obtain alternative employment opportunities, such as professional consulting engagements or interim presidential appointments.

c. Dr. Breuder has suffered extreme embarrassment and humiliation, both personally

and professionally, and has experienced acute emotional distress.

116. Dr. Breuder is entitled to damages to compensate him for the actual and threatened injuries that have resulted or will result from Defendants' actions described above. Dr. Breuder also is entitled to punitive damages from the individual defendants for their malicious, wanton, and unreasonable conduct.

### COUNT II
### DUE PROCESS VIOLATION
### (Liberty Interest)

117. Plaintiff incorporates by reference paragraphs 1 through 116 of this Complaint as paragraph 117 of Count II of this Complaint.

118. Under the Fourteenth Amendment to the United States Constitution, Dr. Breuder has a liberty interest in employment in a chosen profession and the state cannot deprive Dr. Breuder of that interest without due process. The Board has deprived Dr. Breuder of his occupational liberty interests without due process.

119. Defendants Hamilton, Mazzochi, Napolitano, and Bernstein have made false, slanderous, and stigmatizing statements about Dr. Breuder's professional, ethical, and even moral conduct. Defendants Hamilton, Mazzochi, Napolitano, and Bernstein's statements are not supported by fact and have been made solely for personal and political reasons.

120. Defendants Hamilton, Mazzochi, Napolitano, and Bernstein have made these statements publicly and in their official capacity as elected members of the Board. Defendants Hamilton, Mazzochi, Napolitano, and Bernstein's statements are not protected by any privileges or immunities.

121. Dr. Breuder's liberty interests have been implicated as a result of Defendants Hamilton, Mazzochi, Napolitano, and Bernstein's statements as such statements were made both

prior and contemporaneous to actions taken by the Board with respect to Dr. Breuder's employment. Such employment actions were taken against Dr. Breuder without first permitting Dr. Breuder a meaningful opportunity to clear his name of Defendants Hamilton, Mazzochi, Napolitano, and Bernstein's stigmatizing statements.

122.    Dr. Breuder has suffered a loss of professional opportunities central to his profession as a result of Defendants Hamilton, Mazzochi, Napolitano, and Bernstein's stigmatizing statements and the Board's resulting actions against Dr. Breuder. Dr. Breuder has been denied speaking engagements, consultation opportunities, and awards.

123.    The actions taken by Defendants against Dr. Breuder have been so malicious and widely published that it is virtually certain that Dr. Breuder will be unable to find alternative employment, such as consulting opportunities or interim presidential appointments, or to engage in activities central to his profession.

124.    Dr. Breuder is entitled to damages to compensate him for the actual and threatened injuries that have resulted or will result from the Defendants' actions described above. Dr. Breuder also is entitled to punitive damages from the individual defendants for their malicious and unreasonable conduct.

### COUNT III
### CONSPIRACY
Against Individual Defendants Only

125.    Plaintiff incorporates by reference paragraphs 1 through 124 of this Complaint as paragraph 125 of Count III of this Complaint.

126.    Defendants Hamilton, Mazzochi, Napolitano, and Bernstein agreed or reached a mutual understanding to take control of the Board through the April 2015 public election and then to terminate Dr. Breuder in violation of his contractual and constitutional rights.

127.     Defendants Hamilton, Mazzochi, Napolitano, and Bernstein acted in furtherance of that conspiracy by campaigning on a spurious "reformist" platform that was based on malicious and false accusations that Dr. Breuder had committed fraud, abuse, waste, and corruption while President of the College of DuPage. Such false and malicious accusations were knowingly and intentionally made to garner public support for Defendants Hamilton, Mazzochi, Napolitano, and Bernstein and against Dr. Breuder.

128.     Defendants Hamilton, Mazzochi, Napolitano, and Bernstein further pursued their conspiracy by agreeing to conduct sham termination proceedings against Dr. Breuder and by agreeing to misrepresent and distort the results and findings of those proceedings to the public in a manner to further vilify Dr. Breuder and to rally public support for their wrongful actions.

129.     Defendants Hamilton, Mazzochi, Napolitano, and Bernstein perfected their conspiracy by agreeing to deny Dr. Breuder any meaningful opportunity to be heard or to defend himself against Defendants Hamilton, Mazzochi, Napolitano, and Bernstein's malicious and false accusations, and then to terminate Dr. Breuder in violation of his contractual and constitutional rights.

130.     In entering into and carrying out their conspiracy, Defendants Hamilton, Mazzochi, Napolitano, and Bernstein's sole motivation was to further their own personal and political interests, specifically by vilifying the former administration of the College and posturing themselves as saviors of the College and District 502 taxpayers.

131.     As a direct and proximate result of Defendants Hamilton, Mazzochi, Napolitano, and Bernstein's conspiracy, Dr. Breuder was denied rights guaranteed to him under the Fourteenth Amended to the United States Constitution. Dr. Breuder also has sustained damages, including the loss of certain income and benefits, irreparable damage to his personal and

professional reputation, and acute emotional distress.

132.    Dr. Breuder is entitled to damages to compensate him for the actual and threatened injuries that have resulted or will result from Defendants Hamilton, Mazzochi, Napolitano, and Bernstein's actions described above. Dr. Breuder also is entitled to punitive damages from Defendants Hamilton, Mazzochi, Napolitano, and Bernstein for their malicious and unreasonable conduct.

## COUNT IV
## BREACH OF CONTRACT
Against Defendant Board Only

133.    Plaintiff incorporates by reference paragraphs 1 through 132 of this Complaint as paragraph 133 of IV of this Complaint.

134.    On November 18, 2008, Dr. Breuder and the Board executed an Employment Contract, attached hereto as Exhibit A, by which it was agreed that Dr. Breuder would serve as President of the College of DuPage from January 1, 2009 through June 30, 2012. In exchange for Dr. Breuder's service to the College of DuPage, the Board agreed to compensate Dr. Breuder and provide other benefits as set forth in the Employment Contract.

135.    At various points throughout Dr. Breuder's tenure as President of the College of DuPage, the Board approved the extension of the Employment Contract. In or around March 7, 2014, the majority of the Board approved an extension of the Employment Contract to June 30, 2019.

136.    On January 28, 2015, Dr. Breuder and the Board executed a separate agreement governing Dr. Breuder's employment with the College of DuPage. Pursuant to the January 2015 Agreement, attached hereto as Exhibit C, Dr. Breuder agreed, in relevant part, to continue to serve as President of the College of DuPage until March 30, 2016, on which date he would retire.

In exchange, the Board agreed, in relevant part, to provide Dr. Breuder a lump sum payment upon his early retirement. The January 2015 Agreement incorporated all terms of the Employment Contract not superseded by the January 2015 Agreement.

137.    The Board has committed numerous breaches of the January 2015 Agreement, and the incorporated provisions of the Employment Contract, by at least the following actions:

a.  placing Dr. Breuder on forced administrative leave and revoking his right to act as President of the College in bad faith and in contravention of the terms of the January 2015 Agreement, the Employment Contract, Board policies, and the law;

b.  unilaterally declaring the January 2015 Agreement and the Employment Contract void *ab initio* in contravention of the terms of the January 2015 Agreement, the Employment Contract, Board policies, and the law;

c.  willingly and knowingly failing to comply with the termination provisions of Dr. Breuder's Employment Contract;

d.  terminating Dr. Breuder without cause and based solely on the personal interests and political agendas of Defendants Hamilton, Mazzochi, Napolitano, and Bernstein;

e.  denying Dr. Breuder of all rights conferred in the January 2015 Agreement and Employment Contract based solely on the personal interests and political agendas of Defendants Hamilton, Mazzochi, Napolitano, and Bernstein.

138.    At all times relevant hereto, Dr. Breuder has fully performed his duties as President of the College of DuPage. Dr. Breuder also has performed all other obligations set forth in the January 2015 Agreement and Employment Contract. Dr. Breuder is willing, ready, and fully able to continue to perform his duties as President of the College of DuPage for the

duration of the January 2015 Agreement.

139.    As a direct and proximate result of the Board's breaches, Dr. Breuder has

sustained damages, including the loss of certain income and benefits, irreparable damage to his

personal and professional reputation, and acute emotional distress.

140.    Dr. Breuder is entitled to damages to compensate him for the actual and

threatened injuries that have resulted or will result from the Board's actions described above.

**COUNT V**
**TORTIOUS INTERFERENCE WITH CONTRACT**
Against Individual Defendants Only

141.    Plaintiff incorporates by reference paragraphs 1 through 140 of this Complaint as

paragraph 141 of Count V of this Complaint.

142.    Defendants Hamilton, Mazzochi, Napolitano, and Bernstein have tortuously

interfered with the January 2015 Agreement and Employment Contract executed between Dr.

Breuder and the Board by acting to void those contracts without legal basis and to terminate Dr.

Breuder in contravention of the terms of those contracts.

143.    Defendants Hamilton, Mazzochi, Napolitano, and Bernstein have at all times

known about the January 2015 Agreement and Employment Contract and have publicly declared

it their mission to interfere with and "claw back" these contracts using any means necessary.

144.    Defendants Hamilton, Mazzochi, Napolitano, and Bernstein are third parties to

the January 2015 Agreement and Employment Contract under the circumstances due to their

personal biases and political interests to void and terminate the contracts through any means.

145.    Defendants Hamilton, Mazzochi, Napolitano, and Bernstein's actions are not

protected by any qualified immunity, as their conduct was motivated solely by personal biases

and political interests and they engaged in their conduct knowing that it violated Dr. Breuder's

clearly established rights.

146.     Dr. Breuder is entitled to damages to compensate him for the actual and threatened injuries that have resulted or will result from Defendants Hamilton, Mazzochi, Napolitano, and Bernstein's actions described above. Dr. Breuder also is entitled to punitive damages from Defendants Hamilton, Mazzochi, Napolitano, and Bernstein for their malicious and unreasonable conduct.

## COUNT VI
## DEFAMATION
Against Individual Defendants Only

147.     Plaintiff incorporates by reference paragraphs 1 through 146 of this Complaint as paragraph 147 of Count VI of this Complaint.

148.     Defendants Hamilton, Mazzochi, Napolitano, and Bernstein acted recklessly and, at times, with actual malice in making false and defamatory statements to the public regarding Dr. Breuder. Defendants Hamilton, Mazzochi, Napolitano, and Bernstein's statements have implicated Dr. Breuder in unprofessional, unethical, and even criminal conduct.

149.     Defendants Hamilton, Mazzochi, Napolitano, and Bernstein made defamatory statements against Dr. Breuder while knowing the statements were false or while negligently failing to ascertain the truth and validity of the statements.

150.     Defendants Hamilton, Mazzochi, Napolitano, and Bernstein's defamatory statements are not protected by any absolute privileges, as their conduct was motivated solely by personal and political interests and was not reasonably related or necessary to the fulfillment of their official duties.

151.     As a result of Defendants Hamilton, Mazzochi, Napolitano, and Bernstein's actions, Dr. Breuder has experienced severe and irreparable damage to his personal and

professional reputation. Dr. Breuder has been denied professional speaking engagements, consultation opportunities, and awards due to Defendants Hamilton, Mazzochi, Napolitano, and Bernstein's actions.

152. Dr. Breuder is entitled to damages to compensate him for the actual and threatened injuries that have resulted or will result from Defendants Hamilton, Mazzochi, Napolitano, and Bernstein's actions described above. Dr. Breuder also is entitled to punitive damages from Defendants Hamilton, Mazzochi, Napolitano, and Bernstein for their malicious and unreasonable conduct.

## PRAYER FOR RELIEF

WHEREFORE, Dr. Breuder respectfully requests that this Court:

A. Award compensatory damages to Dr. Breuder for Defendants' violations of Dr. Breuder's constitutional and common law rights described above;

B. Award punitive to Dr. Breuder from Defendants Hamilton, Mazzochi, Napolitano, and Bernstein for their violations of Dr. Breuder's constitutional and common law rights described above;

C. Award compensatory damages to Dr. Breuder for Defendant Board's breaches of the January 2015 Agreement and the Employment Contract described above;

D. Award compensatory and punitive damages to Dr. Breuder from Defendants Hamilton, Mazzochi, Napolitano, and Bernstein for their intentional interference with Dr. Breuder's contractual rights;

E. Award compensatory and punitive damages to Dr. Breuder resulting from Defendants Hamilton, Mazzochi, Napolitano, and Bernstein's defamation of Dr. Breuder;

F. Award costs and attorneys' fees to Dr. Breuder; and

G. Award all other relief as the Court finds just and equitable.

## JURY DEMAND

Dr. Breuder demands trial by jury of all issues so triable.

Dated: October 21, 2015                    By:  /s/ James R. Figliulo

James R. Figliulo
Melissa N. Eubanks
FIGLIULO & SILVERMAN, PC
10 S. LaSalle Street, Suite 3600
Chicago, Illinois 60603
Phone: 312-251-4600

Martin A. Dolan
DOLAN LAW, P.C.
10 S. LaSalle Street, Suite 3702
Chicago, Illinois 60603
Phone: 312-676-7600

Terry A. Ekl
EKL, WILLIAMS & PROVENZALE LLC
Two Arboretum Lakes
901 Warrenville Road, Suite 175
Lisle, IL 60532

*Attorneys for Plaintiff*