UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY, | |
| Plaintiff, | No. 22 C 3765 |
| v. | Judge Thomas M. Durkin |
| STATE FIRE AND CASUALTY COMPANY, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Great American Insurance Company is the assignee of an insurance consortium that paid for the defense of and liability for claims against board members of the College of DuPage. Great American seeks a declaratory judgment that State Farm Fire and Casualty Company had a duty to defend one of the board members and has an obligation to reimburse Great American for the costs of the defense of that board member. State Farm has moved for judgment on the pleadings in its favor. That motion is granted.

**Legal Standard**

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is subject to the same standard as a motion under Rule 12(b)(6). *See Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017). A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S.

at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018). "Only when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved will a court grant a Rule 12(c) motion." *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007).

## Background

After the former president of the College of DuPage was fired, he sued the College and its board members—including the board chairperson, Katherine Hamilton—in their individual and official capacities in connection with his termination as president. The former president brought claims for: (1) violation of due process; (2) tortious interference with contract; and (3) defamation regarding statements made in board meetings and to the media and general public. The College had been issued an insurance policy by the Illinois Community College Risk Management Consortium. The Consortium agreed to provide a defense to Hamilton and the other board members, reserving its rights not to cover board member conduct committed outside of their duties as board members. The Consortium has paid the entire defense costs and has indemnified all the defendants. As the Consortium's

assignee, Great American does not seek reimbursement of indemnification payments here.

The Consortium also told Hamilton and the other board members to tender the lawsuit to their respective personal liability insurers. Hamilton has a Personal Liability Umbrella Policy issued by State Farm. Hamilton informed State Farm of the lawsuit and State Farm advised that its defense obligations were not triggered. Despite this, Great American claims that this policy provides that State Farm had a duty to defend Hamilton in the lawsuit brought by the College's former president, and therefore State Farm should reimburse Great American for the defense costs paid by the Consortium.

## Analysis

Great American brings five claims: (Count I) declaratory relief; (Count II) equitable contribution; (Count III) contractual subrogation; (Count IV) equitable subrogation; and (Count V) estoppel. Great American's primary claim is for a declaration that "State Farm has a duty to defend Hamilton in the Underlying Lawsuit under the State Farm Policy." R. 6 ¶ 61. The Court's finding in State Farm's favor on that claim resolves the others.

**I.   Duty to Defend**

The State Farm policy provides:

> If a suit is brought against any insured for damages because of a loss to which this policy applies, we will provide a defense to the insured at our expense . . . when the basis for the suit is a loss that is not covered by any other insurance policy but is covered by this policy.

3

R. 6-3 at 11 (p. 6). Here, the Consortium covered the only loss at issue, and Great American concedes that it is not seeking reimbursement for any of the Consortium's indemnity payments. Because the Consortium covered the only loss at issue, that loss was "covered by any other insurance policy," as provided in the State Farm policy. And because the loss was covered by an insurance policy other than State Farm's, State Farm has no liability for the costs of the defense.

Great American argues that the Consortium's "indemnity obligation does not arise unless and until liability has actually been established." R. 23 at 6. This sentence implies that Great American believes that State Farm had primary obligation to indemnify Hamilton. But that is not actually what Great American is arguing—nor could it because the Consortium indemnified Hamilton for the total loss, and Great American concedes that it does not seek reimbursement for the indemnity payments. Rather, Great American argues that because the Consortium's indemnity obligation was not implicated until a loss was finally established means that the Consortium did not have a duty to defend. *See id.* ("Duties that are contingent upon the determination of an insured's 'legal liability,' or that arise only after adjudication or compromise, are uniquely associated with indemnity and do not imply the existence of a corresponding duty to defend."). Great American also points out that the Consortium's policy expressly states that it does not have a duty to defend, but only a right to participate in the defense. Great American argues that because the Consortium did not have a duty to defend, State Farm's duty to defend

4

must be primary and must have been implicated by the underlying claims against Hamilton.¹

But this argument ignores that State Farm's duty to defend is expressly predicated on the loss at issue being within its policy's scope of coverage. State Farm's scope of coverage is limited to circumstances when there is no other insurance to cover or indemnify the loss, and its duty to defend is thereby also so limited. Ignoring this express provision, Great American's argument assumes that indemnity coverage and defense coverage operate in two separate silos. Great American supposes that because the Consortium had only a right, not a duty, to defend, State Farm's excess coverage for defense costs must then have been implicated because there was no primary insurer with a duty to defend. But State Farm's duty to defend is tied to whether its scope of coverage was implicated. Without State Farm's indemnity coverage being implicated (because the Consortium was covering any liability loss), State Farm's duty to defend wasn't implicated either. The fact that the Consortium exercised its right to defend rather than complied with an obligation is irrelevant to determining whether State Farm had a duty to defend.

Contrary to the express terms of the "Defense" provision, Great American argues that the "Other Insurance" provision shows that the scope of State Farm's coverage is not relevant to whether it had a duty to defend her. Great American

---

¹ The Court notes that this argument is a bit curious because Great American repeatedly admits in the complaint that is has a duty to defend Hamilton. *See* R. 6 ¶¶ 2, 40, 63, 86. The Court assumes that Great American meant to allege that it had a duty to pay defense costs only once liability was ascertained.

highlights that the "Other Insurance" clause in State Farm's policy provides that the "*coverage* provided by this policy is excess over all other insurance and self insurance." R. 6-3 at 16 (p. 11, ¶ 12) (emphasis added). According to Great American, this provision "necessarily applies *only* to resolve priority of *coverage* as it relates to State Farm's potential indemnity obligation." R. 23 at 14 (emphases added). Great American argues that this provision's assertion of being "excess" applies only to "coverage" (or indemnity) such that the excess nature of State Farm's policy is not applicable to its duty to defend. In other words, Great American contends that only State Farm's duty to indemnify is excess, whereas its duty to defend applies to any loss for claims covered by the State Farm policy, regardless of whether there is a primary insurer with a duty to indemnify. But it is the "Defense" provision of the policy, discussed above, that connects a defense to circumstances in which State Farm will provide indemnity coverage; i.e., State Farm only provides a defense when there is no other insurer to cover the loss. Great American's attempt to separate the two duties is unavailing under the express terms of State Farm's policy.

## II. Scope of Coverage

Great American argues that even if State Farm's duty to defend is limited to circumstances when its scope of coverage is implicated, State Farm's coverage was implicated here. Great American contends that "the State Farm Policy is *undeniably* primary as it relates to Hamilton's liability for conduct committed in her individual capacity, because it fills a gap in coverage for which there is not available underlying/primary insurance." R. 23 at 8 (emphasis added). Perhaps this would be

6

true if Hamilton had been sued solely in her personal capacity and suffered a loss as a result. But that is not the case. When the underlying case started, the Consortium stepped in because most of the claims "undeniably" implicated the Consortium's indemnity obligations. Now with the underlying case settled, there is only one loss, which the Consortium undeniably covered. *See Indem. Ins. Co. of N. Am. v. Westfield Ins. Co.*, 58 F.4th 276, 282 (7th Cir. 2023) (holding that if a primary insurer covers a loss, then the excess insurer's duty to indemnify is not triggered, even if the excess insurer's policy would cover the loss if there wasn't a primary insurer). Because the Consortium covered the only loss in the underlying case, there is no loss left for State Farm to cover. Therefore, its coverage is not implicated here, and as discussed, that means that its duty to defend isn't implicated either.

### III. Ambiguity

Great American next argues that there is ambiguity in the "Defense" provision. Again, the provision in question is:

> If a suit is brought against any insured for damages because of a **loss to which this policy applies**, we will provide a defense to the insured at our expense . . . when the basis for the suit is a **loss that is not covered** by any other insurance policy but is covered by this policy.

R. 6-3 at 11 (p. 6) (emphases added). According to Great American, the phrase "loss to which this policy applies" must have a different meaning than the phrase "loss that is [not] covered" because they use different terms. Great American explains that the phrase "'to which this policy applies' connotes a potentiality of coverage based on a theory of liability, from which a duty to defend may be determined, and 'that is

7

covered' implies actual coverage after liability has been established, from which a duty to indemnify may be determined." R. 23 at 11-12. Great American then concludes that "State Farm could not possibly determine whether the loss was 'covered' under its policy or some other policy until after the case concluded in 2022. At a minimum, the language is susceptible to two reasonable interpretations." *Id.* at 12. Under Great American's interpretation, State Farm's policy creates a sort of catch-22 where State Farm can wait until the loss is finally ascertained to determine whether it is "covered," at which point the defense costs will already have been paid.

Putting aside whether this is actually a problematic scenario—Great American seems to have no problem claiming that State Farm has a duty to reimburse defense costs already paid—the fact is that Great American never actually proposes an alternative reasonable interpretation. *See Cent. Illinois Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 213 (Ill. 2004) (to be found ambiguous, contract terms must be "reasonably susceptible to more than one meaning"). Great American contends that the provision *could* be interpreted to mean that State Farm only ever provides a defense *after* liability is determined. But that is not a reasonable interpretation. The only reasonable interpretation of the provision is that State Farm pays defense costs for losses its policy covers when there is no other insurer to cover the loss. There is no ambiguity here because Great American has not proposed any other reasonable interpretation of the provision.

Great American also argues that there is ambiguity in the phrase "when the basis for the suit is a loss." R. 23 at 13. But Great American's argument is not that

8

the phrase is ambiguous; nor does it suggest a competing alternative reasonable interpretation. Great American simply points out that the provision would appear to have the same meaning if the words "basis for the suit is a" were deleted, and the provision simply referred to "the loss." Again, superfluity does not equal ambiguity. *See Stone v. Signode Indus. Grp. LLC*, 943 F.3d 381, 387 (7th Cir. 2019) ("The principle that contracts should be interpreted to avoid rendering language superfluous or redundant is not absolute. Rather, it is a preference to be employed to the extent possible given the range of reasonable meanings that can be ascribed to the contractual language."). Great American has not identified any ambiguity in the provision's meaning.

**IV.    Other Claims**

At bottom, State Farm had no duty to defend because its coverage is excess with respect to the Consortium. And because State Farm's policy is excess, Great American's other claims fail as well. Notably, Great American does not address Counts II, III, or IV in its brief.

The claim for equitable contribution (Count II) fails because that doctrine does not apply to disputes between primary and excess insurers. *See Home Indem. Co. v. Gen. Acc. Ins. Co. of Am.*, 572 N.E.2d 962, 963 (Ill. App. Ct. 1st Dist. 1991) (affirming dismissal of equitable contribution claim in dispute over whether insurer was primary or excess). The claim for contractual subrogation (Count III) fails because an insurer's right to contractual subrogation depends solely on the terms of the subrogation provisions in the insurance agreement. *See Hack v. Multimedia*

*Cablevision, Inc.*, 696 N.E.2d 694 (Ill. App. Ct. 1st Dist. 1998). Here, without establishing that State Farm had a duty to defend, Hamilton has no right to seek contribution from State Farm, and Great American likewise has no such right. Similarly, Great American's claim for equitable subrogation (Count IV) fails because State Farm is not primarily liable. *See Home Ins.*, 821 N.E.2d at 280.

Lastly, Great American's claim that State Farm is estopped from a "no coverage" defense (Count V) fails because the majority rule is that "an excess insurer who has no duty to investigate coverage issues or to defend its insured will not be estopped from later asserting coverage defenses by a failure to issue a reservation of rights letter." *Int'l Ins. Co. v. Sargent & Lundy*, 609 N.E.2d 842, 855 (Ill. App. Ct. 1st Dist. 1993) (collecting cases). Here, State Farm is an excess insurer without a duty to defend, thus permitting a coverage defense without a reservation of rights letter.

## Conclusion

Therefore, State Farm's motion for judgment on the pleadings [18] is granted. Judgement will be entered in State Farm's favor.

ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: March 31, 2023